UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DENISE R. PEREZ,

              Plaintiff,                1:17-cv-00069-MAT

      -v-                          **DECISION AND ORDER**

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

              Defendant.

_____


**INTRODUCTION**

    Denise R. Perez ("Plaintiff"), represented by counsel, brings this action under Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied, and Defendant's motion is granted.

**PROCEDURAL BACKGROUND**

    On October 7, 2013, Plaintiff protectively filed applications for DIB and SSI, alleging disability as of

September 1, 2012, due to morbid obesity, osteoarthritis, degenerative discs, herniated discs, right and left knee problems, plantar fasciitis in both feet, asthma, anxiety, and panic attacks. Administrative Transcript ("T.") 87-88. The claims were initially denied on January 2, 2014. T. 116-27. At Plaintiff's request, a hearing was conducted on November 30, 2015, in Buffalo, New York by administrative law judge ("ALJ") Stephen Cordovani. Plaintiff appearing with her attorney and testified. A vocational expert ("VE") also testified. T. 30-85. The ALJ issued an unfavorable decision on January 11, 2016. T. 9-29. Plaintiff appealed the decision to the Appeals Council, which denied Plaintiff's request for review on December 30, 2016, making the ALJ's decision the final determination of the Commissioner. T. 1-3. This action followed.

**THE ALJ'S DECISION**

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a). Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2016. T. 14.

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2012, the alleged onset date. *Id.*

2

At step two, the ALJ determined that Plaintiff had the following "severe" impairments: bilateral knee problems, degenerative disc disease, asthma, morbid obesity, anxiety and depressive disorders, posttraumatic stress disorder ("PTSD"), and bipolar disorder. *Id.*

At step three, the ALJ found that Plaintiff's impairments did not singly or in combination meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 15. The ALJ specifically considered Listings 1.02 (Major Dysfunction of a Joint); 3.02 (Chronic Respiratory Disorders); 12.04 (Depressive, Bipolar and Related Disorders); and 12.06 (Anxiety and Obsessive-Compulsive Disorders). The ALJ also evaluated Plaintiff's severe impairment of morbid obesity pursuant to the guidelines set forth in Social Security Ruling ("SSR") 02-1p 2002 WL 34686281 (S.S.A. 2002). *Id.*

Before proceeding to step four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following additional limitations: can only occasionally climb ramps, stairs, and balance; can only occasionally bend, and can never kneel, crouch, or crawl; can never climb ladders, ropes, or scaffolds; cannot work at unprotected heights; should avoid concentrated exposure to fumes,

odors, dusts, gases, poor ventilation, and other respiratory irritants; can understand, remember, and carry out simple instructions and tasks; can occasionally perform complex tasks; is capable of low stress work defined further as no supervisory duties, no independent decision-making, with minimal changes in work routine and processes; is limited to occasional interaction with supervisors, coworkers and the general public; and is limited to sitting continuously for no more than one hour at a time with five-minute walking breaks every hour. T. 17.

At step four, the ALJ concluded that Plaintiff is unable to perform any past relevant work as a telemarketer or collection clerk. T. 22. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of stuffer, envelope addresser, and printed circuit board assembler. T. 23. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. T. 24.

**SCOPE OF REVIEW**

A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also*

*Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends that remand is warranted because: (1) the ALJ failed to properly evaluate the opinions of Plaintiff's treating sources; and (2) the ALJ failed to properly consider Plaintiff's obesity in assessing her RFC. For the reasons discussed below, the Court finds Plaintiff's arguments are

without merit, and accordingly affirms the Commissioner's final determination.

## I. The Relevant Medical Opinions of Record

The record contains opinions from several of Plaintiff's treating sources, including orthopedic surgeon Dr. Stefan Fornalski, internist Dr. John Bauers, licensed clinical social worker ("LCSW") Christina Polino, and board certified psychiatric mental health nurse practitioner ("PMHNP-BC") April Kilgour.

### A. Opinion of Dr. Fornalski

Dr. Fornalski performed an arthroscopy on Plaintiff's left knee on November 14, 2012. T. 797. At a follow-up appointment on November 28, 2012, Plaintiff had no complaints and reported improvement of her pre-operative symptoms. T. 803. On September 26, 2013, Dr. Fornalski completed a work status report. T. 1146. He noted that Plaintiff had left leg pain and would need to be placed on permanent modified work and activity restrictions. Specifically, Dr. Fornalski opined that Plaintiff should sit no more than thirty cumulative minutes per hour and that she should be allowed to alternate between standing and walking during her non-seated periods. *Id.*

In his decision, the ALJ gave Dr. Fornalski's opinion "little" weight. The ALJ noted the opinion was not well explained or supported. T. 21. Moreover, the ALJ noted, the opinion

6

appeared to indicate that Plaintiff was able to work and that the walking and standing limitations assigned by Dr. FOrnalski were relatively minor. *Id.*

**B.    Opinions and Treatment Records of Dr. Bauers**

On September 5, 2014, Dr. Bauers wrote a general, unaddressed letter stating that Plaintiff was under his care for several medical problems, including but not limited to asthma, morbid obesity, congestive heart failure, and degeneration and internal derangement of both knees. Dr. Bauers opined that Plaintiff's conditions and the effects of her medications limited her ability to work on a regular basis. T. 1334.

On October 26, 2015, Dr. Bauers completed a Physical Capacity Evaluation, a check-the-box form. T. 1756. Dr. Bauers opined that Plaintiff was able to sit for one hour at a time and stand or walk for half-an-hour at a time during an eight-hour workday. He further stated that Plaintiff could sit for a total of four hours during an eight-hour workday and stand or walk for a total of two hours. Plaintiff could continuously lift up to ten pounds, occasionally lift eleven to twenty-five pounds, and never lift more than twenty-five pounds. Plaintiff could frequently carry up to ten pounds, occasionally carry up to twenty pounds, and never carry more than twenty pounds. Dr. Bauers opined that Plaintiff was unable to use her feet for repetitive movements

such as pushing or pulling of leg controls and was unable to bend, squat, crawl, or climb at any level. Finally, Dr. Bauers opined that Plaintiff was totally restricted from working at unprotected heights and being exposed to marked changes in temperature and humidity, dust, fumes, and gases, and was moderately restricted from working around moving machinery. *Id*.

The treatment records from Dr. Bauers' office span from July 25, 2015, to November 9, 2015, and cover six separate visits. *See* T. 1727-72. The majority of the visits focused on Plaintiff's bipolar treatment and demonstrated unremarkable physical examinations. Plaintiff repeatedly expressed a desire to reduce or stop her psychiatric medications. *See* T. 1734, 1736, 1740, 1769. However, Plaintiff acknowledged no one would be in agreement with that plan, and Dr. Bauers advised her that he would not be willing to agree to decrease her medications without close monitoring, consent, and support of a psychiatrist. *Id*.

In all six of the treatment notes, Dr. Bauers included a diagnosis of internal derangement of her knee. However, Dr. Bauers also noted that on examination, Plaintiff denied back pain, bone pain, and joint pain. T. 1727, 1735, 1740, 1746, 1753, 1767. On July 27, 2015, the portion of the treatment note relating to Plaintiff's knee indicated that Plaintiff was dependent on narcotics and was "not likely to have any successful

intervention" in light of her "current weight status." T. 1730.
On November 9, 2015, at a routine follow-up visit for medication
refills, Plaintiff complained she had been experiencing knee
issues for the past few weeks. T. 1766. Dr. Bauers noted that
Plaintiff had significantly impaired ambulation and possibly had
aggravated or dislodged a cartilage or meniscus fragment.
Dr. Bauers noted further orthopedic evaluations were needed.
T. 1768. He also was unsure if physical therapy would help and
believed that Plaintiff was a poor surgical candidate due to her
obesity. *Id.* Dr. Bauers added that that Plaintiff's morbid
obesity was due to excess calories and that she had undergone a
failed gastric bypass surgery. T. 1769.

In his decision, the ALJ gave Dr. Bauers' opinions "little"
weight, noting that his recent opinions were not consistent with
Plaintiff's treatment notes and activities. T. 21. He also noted
that Plaintiff only presented to Dr. Bauers for routine check-
ups, which regularly showed unremarkable physical examinations.
Furthermore, the ALJ noted that Plaintiff was physically active,
as she was able to go on trips and complete normal activities of
daily living. *Id.*

### C. Opinion of LCSW Polino and PMHNP-BC Kilgour

On October 20, 2015, LCSW Polino completed a Mental RFC
Questionnaire that was later co-signed by PMHNP-BC Kilgour.

9

T. 1808-1812. LCSW Polino noted she had been treating Plaintiff on a weekly to biweekly basis since March 31, 2014.

For clinical findings, LCSW Polino reported Plaintiff's mental status examination was within normal limits and her current GAF score was 55. However, she opined that Plaintiff's extreme emotional outbursts prevented her from being able to interact appropriately in a working environment. T. 1808. LCSW Polino opined that Plaintiff's mental symptoms seriously limited but did not preclude her from understanding and remembering very short and simple instructions. She further stated that Plaintiff was unable to meet competitive standards in regards to her abilities to: remember work-like procedures; carry out very short and simple instructions; make simple work-related decisions; and ask simple questions or request assistance. LCSW Polino indicated that Plaintiff had no useful ability to function in the remaining abilities and aptitudes needed to do unskilled work. These areas included the ability to: maintain regular attendance; maintain attention for two-hour segments; accept instructions and respond appropriately to criticism from supervisors; deal with normal work stress; and ask simple questions or request assistance. T. 1810. LCSW Polino also opined that Plaintiff had no useful ability to function in the areas of interacting appropriately with the general public, maintaining socially appropriate

behavior, or using public transportation. T. 1811. LCSW Polino stated that she expected Plaintiff's symptoms to last at least twelve months and that Plaintiff's impairments or treatment would cause her to be absent from work more than four days per month. T. 1812. Finally, LCSW Polino opined that Plaintiff's chronic physical health issues, including her obesity and chronic pain, could be significant barriers to her ability to work. *Id.*

In his decision, the ALJ gave LCSW Polino's opinion "little" weight. T. 22. The ALJ first noted that under SSR 06-03p, nurses and social workers are not considered "acceptable medical sources" and thus, he considered the opinion under the guidelines of an "other source" opinion. Furthermore, he noted that the extreme limitations assigned in the opinion were not well explained or supported. As an example, the ALJ referenced the opinion's statement that Plaintiff's mental status examinations were within normal limits, but then assigned a number of extreme limitations. *Id.*

## II. The ALJ's Evaluation of the Medical Opinions of Record Was Supported by Substantial Evidence

Plaintiff argues that substantial evidence does not support the ALJ's decision to give "little" weight to the opinions of Dr. Fornalski, Dr. Bauers, and LCSW Polino and PMHNP-BC Kilgour. In particular, Plaintiff contends the ALJ improperly based his

11

decision to assign "little" weight to the opinion of Dr. Fornalski on a misstatement of the evidence of record, and that he further erred by impermissibly cherry-picking the record to support his decision. For the reasons set forth below, the Court finds Plaintiff's arguments are without merit.

Pursuant to the regulations applicable to Plaintiff's claim, an ALJ is required to give controlling weight to the opinion of a treating physician so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). However, it is permissible for an ALJ to give less than controlling weight to a treating physician's opinion he or she finds does not meet this standard, provided he or she "comprehensively set[s] forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)); *see* 20 C.F.R. § 404.1527(c)(2) (stating the agency "will always give good reasons in our notice of determination or decision for the weight we give to [the claimant's] treating source's opinion").

In his decision, the ALJ set forth several legitimate reasons for not giving controlling weight to the opinions of

treating sources Dr. Fornalski, Dr. Bauers, LCSW Polino and PMHNP-BC Kilgour. Specifically, the ALJ noted that the opinion of Dr. Fornalski was not well explained or supported; the opinions of Dr. Bauers were not consistent with his treatment notes or Plaintiff's activities; and the relatively extreme limitations in the opinion of LCSW Polino and PMHNP-BC Kilgour were not well explained or supported. T. 21-22. As explained below, these were all appropriate considerations for the ALJ to take into account when determining the weight to afford each opinion.

## A.  Dr. Fornalski's Opinion Was Not Properly Supported with Medical Evidence

Plaintiff argues the ALJ's reasoning that Dr. Fornalski's opinion was not well explained or supported is a misstatement of the evidence of record. In particular, Plaintiff points to the evidence of record showing Dr. Fornalski performed surgery on Plaintiff's knee and administered cortisone injections. However, Dr. Fornalski failed to cite any supporting clinical findings or otherwise explain the basis of his opinion. It was appropriate for the ALJ to take the absence of any explanation into consideration when weighing the opinion. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more

weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). Furthermore, "[c]ourts in this Circuit have consistently held that 'lack of supporting detail and/or objective findings provides a . . . reason for affording [an] opinion less weight.'" *Whitehurst v. Berryhill,* No. 1:16-cv-01005-MAT, 2018 WL 3868721, at *3 (W.D.N.Y. Aug. 14, 2018) (quoting *Wright v. Colvin*, No. 5:12-cv-0440, 2013 WL 3777187, at *15 (N.D.N.Y. July 17, 2013).

### B. Dr. Bauers' Opinions were Inconsistent with Treatment Notes and Plaintiff's Reported Activities

The ALJ also properly explained his reasons for giving "little" weight to the opinions of Dr. Bauers. The ALJ noted that Dr. Bauers' opinions were inconsistent with treatment notes and Plaintiff's activities. A treating physician's opinion is not entitled to controlling weight where it is not corroborated by the contemporaneous treatment notes and further contradicted by other medical evidence. *Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009) (unpublished opn.); *see also Shaffer v. Colvin*, No. 1:14-CV-00745 (MAT), 2015 WL 9307349, at *4 (W.D.N.Y. Dec. 21, 2015) (ALJ properly rejected treating physician's opinion where it was inconsistent with his own treatment notes).

Despite including Plaintiff's diagnosis of knee derangement, none of Dr. Bauers' treatment notes indicate any abnormal examination findings until November 2015, when Plaintiff complained of knee issues existing for the past few weeks. *See* T. 1766-68. At that time, Dr. Bauers noted Plaintiff would need further orthopedic evaluations but was skeptical that any treatment would be successful. *Id.*

Furthermore, the Court notes that Dr. Bauers' October 26, 2015 opinion – which predated Plaintiff's November 2015 knee complaints – was a check-the-box form with no explanations or supporting clinical findings referenced. *See* T. 1756. Standardized form checklists are "only marginally useful for purposes of creating a meaningful and reviewable factual record." *Halloran v. Barnhart*, 362 F.3d 28, 31 n. 2 (2d Cir. 2004); *see also*, *e.g.*, *Llorens-Feliciano v. Astrue,* No. 6:11-cv-924, 2012 WL 6681772, at *3 (N.D.N.Y. Dec. 21, 2012) ("'Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.'") (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)). This factor further supports the ALJ's determination to assign limited weight to Dr. Bauers' October 26, 2015 opinion.

**C. LCSW Polino and PMHNP-BC Kilgour's Opinion Was Inconsistent and Unsupported by the Record**

The Court also finds the ALJ properly evaluated the opinion of LCSW Polino and PMHNP-BC Kilgour. As a threshold matter, the Court notes that the opinions of social workers and nurse practitioners are not subject to the presumption of deference accorded to treating physicians or other acceptable medical sources. *See* SSR 06-03p (S.S.A.), 2006 WL 2329939, at *2 (Aug. 9, 2006); *Smith V. Commissioner of Social Security*, 337 F. Supp.3d 216, 222 (W.D.N.Y. 2018) ("Because they are not acceptable medical sources pursuant to the Regulations, nurse practitioners cannot be considered treating sources subject to the treating physician rule."). Nonetheless, the ALJ considered the opinion within the context of the record as a whole, as required by SSR 06-03p.

The ALJ noted that the limitations included in the opinion were relatively extreme in comparison to the clinical findings and supporting explanations. T. 22. In particular, the ALJ noted that LCSW Polino stated Plaintiff's mental status examinations were within normal limits. *See* T. 1759. However, LCSW Polino opined Plaintiff had no useful ability to function in numerous mental abilities and aptitudes needed to do unskilled work, including the ability to maintain attention for two-hour

16

segments, maintain regular attendance, sustain an ordinary routine without special supervision, or deal with normal work stress. T. 1761. LCSW Polino noted at one point in the opinion that Plaintiff was "unable to interact with others in a stressful environment of triggering situations without exhibiting extreme behavior." T. 1762. However, LCSW Polino failed to provide any examples of "triggering situations" or what she considered "extreme" behavior.

Further contradicting LCSW Polino's extreme limitations, the ALJ noted, other treatment notes showed Plaintiff had a good response to her mental health medications and reported her anxiety and bipolar disorder were stable. T. 18. The Court notes that Dr. Bauers, who also treated Plaintiff for her bipolar disorder, repeatedly indicated in his treatment notes that with respect to her bipolar disorder, Plaintiff was "feeling well" and that her condition was "mostly well controlled." *See, e.g.,* T. 1727, 1734, 1746. The Court finds such inconsistencies and lack of support were appropriate factors for the ALJ to consider when weighing the LCSW Polino's opinion. *See Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp.3d 376, 386 (W.D.N.Y. 2015) (ALJ did not err in considering inconsistencies in the opinion of a social worker when that opinion was also inconsistent with other medical sources in the record).

In sum, the Court finds the ALJ appropriately explained in detail why he did not fully credit the relevant medical opinions above. Accordingly, the Court finds remand is not warranted on this basis.

### D.    The ALJ Permissibly Included One of Plaintiff's GAF Scores in the Decision

Plaintiff also makes the cursory argument that the ALJ impermissibly cherry-picked the record when referencing Plaintiff's global assessment of functioning ("GAF") score of 64 to support his findings. For the reasons set forth below, the Court finds this argument is without merit.

In his decision, the ALJ noted that Plaintiff's treatment notes continued to show she was having a good response to medication. For example, Plaintiff was assigned a GAF score of 64 on May 3, 2013. T. 18 *referring to* T. 1012. Plaintiff argues that making such a selective reference, without also including Plaintiff's other GAF scores from the record, which range in the 50s, was impermissible. The Court disagrees.

The ALJ did not place great reliance on Plaintiff's GAF score of 64, but rather used it as evidence that at the time the score was given, Plaintiff was responding well to her medication. Such use of a single GAF score to merely support an otherwise well-supported observation was entirely appropriate. Plaintiff's

suggestion that including additional GAF scores from the record, the majority of which ranged from 55 to 58 (*see, e.g.* 422, 905, 1554, 1777), would leave the RFC finding unsupported is meritless.

"[S]tanding alone, a GAF score, which can reflect social and/or occupational functioning, does not necessarily evidence whether an impairment seriously interferes with a claimant's ability to work." *Garcia v. Colvin*, No. 13-CV-6433P, 2015 WL 1280620, at *8 (W.D.N.Y. Mar. 20, 2015) (internal quotation marks and citations omitted). Instead, an ALJ is required to incorporate GAF scores in their evaluation of the record as a whole. *See, e.g., Walterich v. Astrue,* 578 F. Supp.2d 482, 515 (W.D.N.Y. 2008) (ALJ improperly relied on GAF score alone to discount treating physician opinion; "[t]he ALJ, however, is not permitted to rely on any test score alone[;] ... [n]o single piece of information taken in isolation can establish whether [a claimant is disabled]") (internal quotations omitted).

The ALJ did not place great reliance on Plaintiff's GAF score of 64, but rather used it as evidence that at the time the score was given, Plaintiff was responding well to her medication. Such use of a single GAF score to merely support an otherwise well-supported observation was entirely appropriate. *See*, *e.g.*, *Walterich*, 578 F. Supp.2d at 515. Plaintiff's suggestion that

including additional GAF scores from the record, the majority of which ranged from 55 to 58 (*see, e.g.* T. 422, 905, 1554, 1777), would leave the RFC finding unsupported is meritless.

Rather than use Plaintiff's GAF scores as a basis to discredit any opinion or establish that Plaintiff was not disabled, the ALJ appropriately used one of Plaintiff's GAF scores as supportive evidence that at that time, Plaintiff was showing improvement with her medications. "Treatment notes continue to show [Plaintiff] had good response to medication . . . [Plaintiff] was also assigned a GAF score 64, which indicates she only presented with some mild symptoms." T. 18. The Court finds no error in such use of a GAF score.

Moreover, the Court finds that Plaintiff's GAF scores as a whole are not in conflict with the ALJ's RFC finding. According to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), GAF scores between 51 and 60 are indicative of no more than "moderate symptoms." The ALJ's RFC finding includes several non-exertional limitations accommodating such moderate limitations, including limiting Plaintiff to: only occasionally performing complex tasks; no supervisory duties; no independent decision-making; minimal changes in work routine and processes; and only occasional interaction with supervisors, coworkers, and the general public. T. 17. *See Jiminez v. Colvin*,

No. 2018 WL 459301, at *3 (W.D.N.Y. Jan. 18, 2018) (moderate limitations in social interactions were appropriately accounted for with a limitation of "occasional interaction with co-workers, supervisors, and the general public") (internal citations omitted). Accordingly, the Court finds no error in the ALJ's decision to include only one of Plaintiff's GAF scores in his analysis and thus, remand is not warranted on this basis.

## III. The ALJ Properly Considered Plaintiff's Obesity

Finally, Plaintiff argues the ALJ failed to properly consider her obesity when assessing her RFC, specifically taking exception to the ALJ's omission of Plaintiff's weight or body mass index ("BMI") in the decision. For the reasons set forth below, the Court finds Plaintiff's argument is without merit.

SSR 02-1p provides an ALJ must explain how a claimant's obesity affects the RFC assessment. Courts in this district have required varying degrees of explanation in this area. *See, e.g., Kelsey v. Commissioner of Social Security*, 335 F. Supp.3d 437, 445 (W.D.N.Y. 2018) (ALJ complied with SSR 02-1p by expressly considering plaintiff's obesity throughout the analysis and incorporating limitations associated with difficulties plaintiff attributed to her weight into the RFC finding); *Bus v. Astrue*, No. 08-CV-00481-A(M), 2010 WL 1753287, at *6 (W.D.N.Y. Apr. 29, 2010) (ALJ's decision was upheld where ALJ stated, without

21

elaboration, that obesity was considered in establishing the RFC finding); *Ayers v. Astrue,* No. 08-CV-69A, 2009 WL 4824605, at *11 (W.D.N.Y. Aug. 31, 2009) (ALJ's incorporation of physical limitations into the RFC assessment suggested by claimant's doctors was sufficient, despite ALJ's failure to specifically address obesity).

The ALJ found Plaintiff's obesity to be a severe impairment at step two. T. 14. The ALJ then explained the requirements of SSR 02-1p and stated he "fully considered obesity in the context of the overall record evidence in making this decision." T. 15-16. The ALJ then referenced Plaintiff's obesity several times throughout the decision, noting that it was included in her history of physical health issues (T. 19), and that her treating sources noted it as a contributing factor to her knee impairment, though she had made no attempts at weight reduction (T. 20). Furthermore, the ALJ gave significant weight to the opinion of Dr. Hongbiao Liu (T. 21), who specifically noted Plaintiff's weight and diagnosed her with morbid obesity (T. 1166-68). Taking the examination findings into account, including Plaintiff's obesity, Dr. Liu opined Plaintiff had mild to moderate limitations in prolonged walking, bending, and kneeling. T. 1169. The ALJ clearly made accommodations for those limitations in the

RFC finding, limiting Plaintiff to sedentary work, only occasionally bending, and never kneeling. T. 17.

The Court finds the ALJ's multiple references to Plaintiff's obesity throughout the decision, and his consideration of Plaintiff's treatment records which amply document her obesity and its impact on her other medical impairments, were sufficient to demonstrate that he did indeed consider Plaintiff's obesity when assessing her RFC. *See Tracy v. Astrue*, No. 09-CV-953S, 2011 WL 3273146, at *7 (W.D.N.Y. July 29, 2011) (ALJ sufficiently considered plaintiff's obesity where medical evidence that incorporated plaintiff's obesity was considered and ALJ expressly stated she considered plaintiff's obesity when assessing her RFC). Accordingly, remand on this basis is not warranted.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 9) is denied. The Commissioner's opposing motion for judgment on the pleadings (Docket No. 10) is granted. The Clerk of Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:    February 20, 2019
          Rochester, New York